JACOB POLLACK, Plaintiff, *v.* JEAN R. SPRINGER et al., Doing Business as R & S REALTY Co., Defendants.

City Court of the City of New York, Trial Term, Bronx County, June 15, 1949.

*Abraham A. Katz* for plaintiff.

*George S. Fishman* for defendants.

EVANS, J. This action is by a tenant to recover his security, deposited under a lease, for violation by the defendant, landlord,

of section 233 of the Real Property Law, and the landlord defends and counterclaims for damages, on the ground of tenant's breach of the terms of the lease.

Plaintiff, as tenant, and defendants, as landlord, entered into a written lease (Gilsey form) for store premises, beginning September 1, 1948, and ending August 31, 1956. Tenant deposited $1,800, with the landlord, for the faithful performance of the terms of the lease. In December, 1948, the landlord commenced a summary dispossess proceeding for nonpayment of rent, and, before the proceeding was heard, the tenant removed from the premises. The proceeding was then discontinued. For each of the months of December, 1948, and January, 1949, the landlord obtained judgments for the rent, in the Municipal Court. The landlord then relet the premises, at a reduced rental, from February 1, 1949, to January 31, 1954, with an option to the new tenant to renew, at a reduced rental, beyond the term of plaintiff's lease. But since no one now knows whether the new tenant will exercise the option, there remain nineteen months of plaintiff's lease, which may still be subject to reletting by defendants. As to the disputed question of fact, the court finds that defendants have violated section 233 of the Real Property Law, in that they mingled the tenant's security with their own moneys.

Immaterial, here, are any criminal sanctions for violation of the Penal Law, by reason of the commingling of the security (Penal Law, §§ 1302, 1302-a). Such conduct, by defendants, must be treated, here, as a conversion of a trust fund (*2710 8th Ave., Inc.*, v. *Forman Pharmacy*, 180 Misc. 376). The only question open is whether the conversion may be excused, because the tenant was guilty of a breach of the terms of the lease.

If section 233 of the Real Property Law could be read into the lease, as a part thereof, and no more, the solution would be simple. The court would then find it easy to say, that both parties having breached the contract, they will be left as they are. It would be then easy, at least so far as plaintiff's claim is concerned, to say that although he proved a breach of the contract on the part of defendants, he himself has not shown that he duly performed, or that he was prevented by defendants from due performance.

Taking into consideration the reason for the statute and its purpose, I do not think the courts are authorized to read it into the terms of the lease. If that were done, then the tenant's breach of the terms of the lease would grant the landlord complete civil immunity from the effects of the statute, and there is no indication, in the statute, that only those tenants who fully

complied with the terms of the lease were protected. If the Legislature intended the courts to treat the statute as a protection only to complying tenants, some indication thereof would have appeared therein. Perhaps a rough kind of justice, under the circumstances here disclosed, might be able to let the landlord hold the security until August 31, 1956, the time when the landlord can fully ascertain the damages for the breach of the lease by the tenant. But I do not see how the courts can allow the defendants to hold the security they possess, as tort-feasors, civilly, and possible misdemeanants, criminally.

It should, therefore, be held that the statute is for the protection of all tenants, and that breach of the terms of the lease, by the tenant, is no defense to an action by the tenant to recover his security by virtue of section 233 of the Real Property Law.

We come to the counterclaim. By the terms of the lease, the landlord is entitled to the difference in rent at the end of each month, as in *McCready* v. *Lindenborn* (172 N. Y. 400). Defendant is, therefore, allowed that difference, up to the day of trial, when, by consent, the counterclaim was interposed, and the expenses in the dispossess proceeding. The balance of the counterclaim, which has to do with the claim of damages for tenant's removal from the premises, the reletting at a reduced rental, and incidental expenses connected therewith, is dismissed without prejudice, as prematurely brought. Since nineteen months of the plaintiff's term may still be subject to reletting by the landlord, the defendants still have opportunity to recoup the loss suffered by the plaintiff's breach of the terms of the lease. It is therefore clear that defendants' damage is not now ascertainable, and that by August 31, 1956, the plaintiff's breach may result in no damage to defendants. Reading *Hermitage Co.* v. *Levine* (248 N. Y. 333), there is danger that the assessment of defendants' damage, at this time, may result in injustice later.

The judgments in the Municipal Court cannot be considered as an offset or a counterclaim, because these judgments are separately enforcible and do not constitute a counterclaim, as defined in section 266 of the Civil Practice Act. The defendants have ample remedy to offset the Municipal Court judgments against this judgment, outside of this action.

Plaintiff may, therefore, have judgment for $1,800, with interest as demanded in the complaint, less the sum of $259.60 with interest on $50 from February 1, 1949; $50 from March 1, 1949; $50 from April 1, 1949; $50 from May 1, 1949; and $59.60 from January 1, 1949.

Ten days' stay; thirty days to make a case. Please call for exhibits.